Herbert G. Roskind, Jean Roskind v. Commissioner.
Roskind v. Commissioner
Docket No. 45974.
United States Tax Court
T.C. Memo 1955-281; 1955 Tax Ct. Memo LEXIS 55; 14 T.C.M. (CCH) 1094; T.C.M. (RIA) 55281; October 20, 1955
*55 Petitioners were engaged during 1948 in the operation of two retail businesses. The Commissioner has added $34,185.24 to the income reported by the petitioners from these businesses in their joint return for 1948. In a stipulation filed, the parties have removed $17,235.70 of the Commissioner's determination from any further dispute. There remains in controversy $16,949.54 which the Commissioner added to the income reported by petitioners and designated in the deficiency notices as "Deposit in Personal Bank Accounts originating from unknown sources." Held, petitioners have identified $9,562.62 of these deposits as being from sources which were not income to petitioners in 1948. As to this $9,562.62 the Commissioner is reversed. Held, further, the evidence as to the remainder of the $16,949.54 is not sufficient to overcome the presumptive correctness of the Commissioner's determination. As to this part of the Commissioner's determination, he is sustained. Ben Kohler, Jr., Esq., for the petitioners. Ralph V. Bradbury, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioners' income *56 tax for the year 1948 of $17,859.04. The deficiency is due to one adjustment to the $37,359.77 net income reported by petitioners on their joint income tax return. That adjustment is explained in the deficiency notice, as follows: "(a) It has been determined that the income reported on your 1948 return from The Vogue, Charlotte, N.C., and The Vogue, Spartanburg, S.C., was understated by $34,185.24, * * *" Following the above statement in the deficiency notice is a computation showing how respondent arrived at the figure of increase of $34,185.24. Petitioners assign error as to this determination of the Commissioner. At the hearing the parties filed a stipulation in which it was agreed that only a part of the deficiency is now in dispute. Findings of Fact The parties have stipulated a part of the facts and this stipulation of facts is incorporated herein by reference. The petitioners are husband and wife and reside in Atlanta, Georgia. They filed a joint return for the year 1948 on the cash basis with the collector at Greensboro, North Carolina. Petitioners Herbert G. Roskind and Jean Roskind will sometimes hereinafter be referred to as Herbert and Jean, respectively. *57 In the notice of deficiency the Commissioner determined that petitioners' net income was understated in the aggregate amount of $34,185.24. Petitioners concede the Commissioner's determination in this respect to be correct to the extent of $4,492.08. The Commissioner concedes his determination in this respect to be incorrect to the extent of $12,743.62. The signle issue remaining in controversy relates to an item of $16,949.54 which is set forth in the notice of deficiency as follows: Deposits in Personal Bank Accounts originat-
ing from unknown sources: H. G. Roskind, First National
Bank, Atlanta, Ga.
$ 5,252.88
Mrs. H. G. Roskind, First Na-
tional Bank, Atlanta, Ga.
8,696.54
H. G. Roskind, Commercial Na-
tional Bank, Charlotte, N.C.
3,000.12
$16,949.54
During the year 1948, petitioners maintained the following personal bank accounts: Name of Account
Location
H. G. Roskind
Commercial National Bank,
Charlotte, North Carolina
H. G. Roskind
First National Bank,
Atlanta, Georgia
Mrs. H. G.
Roskind
First National Bank,
Atlanta, Georgia
Mrs. Herbert
Roskind
First National Bank,
Atlanta, Georgia Each of these personal *58 bank accounts was a checking account. During the entire year 1948, petitioners owned and operated a retail ladies ready-to-wear business under the business name of The Vogue. The business consisted of two retail establishments located in Charlotte, North Carolina, and Spartanburg, South Carolina. During the entire year 1948, double entry bookkeeping records were maintained by petitioners in the operation of this business. The petitioners maintained no books and records during 1948 other than those used in their business. Included in the bookkeeping records during the taxable year 1948 were entries reflecting personal withdrawals by petitioners during 1948 in the aggregate amount of $42,604.39. All of these withdrawals were debited or charged to petitioners' personal drawing accounts in the bookkeeping records and were withdrawn by checks issued on petitioners' business bank account. No part of these withdrawals was deposited in petitioners' personal bank accounts enumerated in the stipulation during the taxable year 1948. Deposits were made to petitioners' following bank accounts during 1948: Account
Bank
Date
Amount
H. G. Roskind
Commercial National
January 9
$3,000.12
*59 There was on deposit in this account on January 1, 1948, $17,887.16. Checks were drawn on this account by Herbert in various amounts throughout the year 1948, until at the end of the year no further funds were on deposit in the account. Herbert drew checks on the account for $2,000 and $1,000, respectively, and those checks were charged to the account on January 7, 1948, thereby reducing the account to $14,887.16. When Herbert deposited $3,000.12 to the account on January 9, 1948, as shown above, there was then a credit balance in the account of $17,887.28, which made the credit balance in the account 12 cents more than it was January 1, 1948. No further deposits were made in this account during 1948. Other deposits during that year were: Account
Bank
Date
Amount
H. G. Roskind
First National
March 17
$1,319.35
April 22
1,700.00
May 17
1,215.85
July 16
1,017.68
Mrs. H. G. Roskind
First National
Sept. 30
5,436.72
Oct. 18
2,534.82
Nov. 26
725.00
During 1948, petitioners were engaged in no business other than the operation of their retail establishments known as The Vogue and located in Charlotte and Spartanburg. In May *60 1948, Herbert suffered a coronary thrombosis and was not active in business for 7 or 8 months thereafter. While her husband was incapacitated Jean issued business checks and made several business decisions in connection with The Vogue. Daily bank deposits from the operation of The Vogue were made in Charlotte and Spartanburg by the cashier or manager employed by petitioners. The cashier-bookkeeper employed by petitioners in the respective stores prepared daily report sheets showing sales, merchandise returned, shortage and overage, and net deposit of each day's operation of The Vogue. The daily report sheets prepared by petitioners' employees in The Vogue were mailed to petitioners in Atlanta and were there recorded in double entry bookkeeping records by their accountant in Atlanta. During 1948, no funds or moneys were received by petitioners from The Vogue other than $42,604.39, all of which sum was withdrawn by checks issued on petitioners' business bank account and recorded on their business bookkeeping records as personal drawings. With the exception of an unexplained amount of $550.15, a reconciliation with total deposits to the business bank accounts and the bookkeeping *61 records of The Vogue for 1948 disclosed that total deposits in the amount of $766,181.12 were reflected in the bookkeeping records. On September 30, 1948, Herbert deposited to the account of Jean at the First National Bank of Atlanta, a check in the amount of $5,000, bearing date of September 24, 1948. This check was issued by Eddie Roskind, a brother of Herbert's, to Sam Roskind, also a brother of Herbert's, and endorsed by Sam Roskind to Herbert in repayment of a prior loan which Herbert had made to Sam. On January 9, 1948, Herbert deposited $3,000.12 to his account at the Commercial National Bank in Charlotte. This deposit represented in part the redeposit by Herbert of the proceeds of checks cashed by him several days prior thereto in Miami, Florida, in the sum of $3,000. These checks were drawn by Herbert on his bank account in the Commercial National Bank, Charlotte. At various times during 1948, Herbert deposited to his personal bank account with the First National Bank of Atlanta the sum of $1,562.50 derived from interest collected from United States Treasury coupon bonds or notes. This interest income was reported by petitioners in their joint return filed for the year *62 1948. All deposits to petitioners' three personal bank accounts in 1948 were made by Herbert. Petitioners reported in their joint return for 1948 income as follows: Interest
$ 1,562.50
Other Income
39,859.56 A schedule attached to the return shows that the $39,859.56 reported as other income was made up of $19,352.02 net profit from The Vogue in Charlotte and $20,507.54 net profit from The Vogue in Spartanburg. Ultimate Facts The $3,000.12 deposited to Herbert's bank account January 9, 1948, with the Commercial National Bank, Charlotte, was a redeposit of funds previously withdrawn by Herbert from his bank account and did not represent unreported income for 1948, as respondent has determined. Of the $5,252.88 deposited to Herbert's bank account with the First National Bank of Atlanta in 1948, $1,562.50 represented interest collected from United States Treasury bonds. This interest income was reported by petitioners in their joint return for 1948. The balance of the $5,252.88 deposited in this account in 1948 has not been identified. Of the $8,696.54 deposited in 1948 by Herbert to Jean's account in the First National Bank of Atlanta, $5,000 was a check *63 endorsed to Herbert by his brother Sam and represented a repayment of a loan which Herbert had made to Sam in a prior year. This check is dated "9-24-1948" and is on The National City Bank of New York and payable to Sam Roskind and is signed by Eddie Roskind. It is endorsed on the back thereof "Sam Roskind for deposit by Herbert Roskind only" and then also bears the endorsement of Herbert. It did not represent unreported income of petitioners in 1948 as respondent has determined. The balance of the $8,696.54 deposited in 1948 by Herbert to Jean's account in the First National Bank has not been identified. Opinion BLACK, Judge: The Commissioner in his deficiency notice added to the $37,359.77 net income as reported by petitioners on their joint tax return, $34,185.24 as "Income from business increased." In the stipulation which was filed at the hearing, petitioners concede that respondent's determination is correct to the extent of $4,492.08. Respondent, on his part, concedes that his determination was incorrect to the extent of $12,743.62. Thus it will be seen that of the $34,185.24 which was originally at issue between the parties, $17,235.70 is no longer in issue. Effect will *64 be given to the agreement between the parties in a recomputation under Rule 50. The parties in the stipulation also agreed that, "The single issue remaining in controversy relates to an item of $16,949.54 which is set forth in the statutory notice of deficiency as follows: Deposits in Personal Bank Accounts Originating from Unknown Sources H. G. Roskind, First National
Bank, Atlanta, Ga.
$ 5,252.88
Mrs. H. G. Roskind, First Na-
tional Bank, Atlanta, Ga.
8,696.54
H. G. Roskind, Commercial
National Bank, Charlotte,
N.C.
3,000.12
$16,949.54"
While it is clear that respondent's initial determination that the bank deposits in question represent taxable income is presumed to be correct, it is equally clear that this presumption of correctness is one of law, not of fact, and disappears when evidence is introduced sufficient to sustain a contrary finding. ; ; ; . At the hearing *65 of this case, petitioners introduced considerable evidence, oral testimony and documentary evidence to rebut the presumptive correctness of respondent's determination. We think petitioners have succeeded in doing this to the extent of $9,562.62 of the $16,949.54 which the Commissioner determined represented unreported income of petitioners from unknown sources. The $9,562.62 which we think petitioners have proved did not represent unreported income is composed of the following three items: 1. The $3,000.12 which Herbert deposited in his personal account with the Commercial National Bank, Charlotte, on January 9, 1948. We are satisfied from the evidence that this $3,000.12 was money which petitioner had withdrawn from his bank account prior to January 9, 1948, for the purpose of purchasing a boat in Florida where he was on vacation. His negotiations to purchase the boat fell through because the owner raised his asking price for the boat to $4,000. Herbert refused to purchase the boat on these terms and redeposited the proceeds of the checks with the Commercial National Bank in Charlotte on January 9, 1948. The bank statement attached to the stipulation of facts, we think, corroborates *66 petitioners as to this particular item. It seems clear to us that this $3,000.12 did not represent unreported income of petitioners. We hold against the Commissioner as to this item. 2. Herbert testified that he and Jean owned some United States bonds in 1948 and that the interest collected from these bonds amounted to $1,562.50. He testified that when the $1,562.50 was collected from time to time it was deposited in his personal bank account in Atlanta. Petitioners' income tax return which is in evidence shows that petitioners reported this amount for tax in 1948. We are convinced that this $1,562.50 was deposited as petitioners claim and we sustain petitioners' contention that this $1,562.50 did not represent unreported income. As to this item the Commissioner is reversed. 3. Now as to the amounts deposited in Jean's account by Herbert with the First National Bank of Atlanta, she testified but her testimony was not of great value in reaching a decision on the issue we have to decide. She had not made any of the deposits in her bank account. They were made by Herbert from time to time and the money was placed there that she might have an independent checking account of her own *67 and could pay bills of her own and of the household. She had no knowledge of the source of the amounts deposited. After a careful examination of the evidence it seems to us that the only money deposited in Jean's bank account which has been definitely identified was the $5,000 check which Herbert had received from his brother Sam in September 1948 in repayment of a loan he had made to Sam in a prior year. Therefore, we have found in our Findings of Fact that of the money deposited in her bank account September 30, 1948, $5,000 did not represent unreported income. We hold that the Commissioner was in error in including this $5,000 in petitioners' income. As to the balance of the items deposited in Jean's account, we are unable to hold that petitioners have offered sufficient evidence to overcome the presumption of correctness in the Commissioner's determination. Decision will be entered under Rule 50.